**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | | |
| Plaintiff, | | No.  CR26-2013-LTS-MAR |
| vs. | | |
| IRVIN LAMONT WILLIAMS, | | **MEMORANDUM OPINION AND ORDER ON REPORT AND RECOMMENDATION** |
| Defendant. | | |

This matter is before me on a Report and Recommendation (R&R) (Doc. 37) in which the Honorable Mark A. Roberts, United States Magistrate Judge, recommends that I deny defendant Irvin Williams' motion (Doc. 24) to suppress evidence.  Williams has filed objections (Doc. 38).

## *I.     BACKGROUND*

Williams is charged in an indictment (Doc. 3) with one count of possession of a firearm by a prohibited person in violation of 18 U.S.C. §§ 922(g)(1), 922(g)(9) and 924(a)(8).  He seeks the exclusion of evidence obtained during an encounter with law enforcement officers on February 18, 2026, including: (1) a Jimenez Arms 9mm firearm and any associated ammunition seized from a search of Williams' electric bicycle or e-bike and (2) a blue Samsung Smartphone, along with any evidence derived from the seizure of that phone, the extraction of any data from that phone and the review of that data.  As noted by Judge Roberts, the Government does not intend to offer evidence from the search of the phone.  Therefore, Williams' motion as to that evidence will be granted and this order will address only the suppression of the firearm and associated ammunition.

Judge Roberts held an evidentiary hearing on May 14, 2026.  Doc. 33.  The Government called Detective Jesse Aitchison of the Waterloo Police Department (WPD).

*Id.* Judge Roberts also admitted Government Exhibit 1 (video of Detective Aitchison's body camera) Government Exhibit 2 (video from Detective Gavin Kramer's body camera), Defense Exhibit A (Report by Kramer), Defense Exhibit B (video of pursuit of defendant), Defense Exhibit C (video of search of defendant's e-bike) and Defense Exhibit D (video of defendant's arrest). *Id.* Judge Roberts issued his R&R (Doc. 37) on June 29, 2026, and Williams filed timely objections (Doc. 38) on July 13, 2026. Trial is scheduled to begin September 21, 2026.

## II.     THE R&R

### A.     *Findings of Fact*

Judge Roberts made the following findings of fact:

> On February 18, 2026, Defendant was chased on his electric bicycle by WPD officers. After he was stopped, a bag on the bicycle was searched and a firearm was discovered. At the time of the chase, Det. Aitchison was aware of a first-degree harassment charge that resulted in an outstanding warrant for Defendant's arrest. Det. Aitchison had been working on November 14, 2025 when the alleged harassment incident occurred. (Aitchison Hr'g Test. at 4-5.) Det. Aitchison learned that Defendant had threatened the victim with a firearm and threatened to shoot up the victim's residence. (*Id.* at 5.) The victim also told officers that Defendant had previously pistol-whipped someone and was in possession of a firearm. (*Id.*) Det. Aitchison was asked to help locate Defendant, but Defendant's whereabouts remained unknown in December 2025 and January 2026. Also, in January 2026, the victim reported shots fired at the victim's residence where officers located spent 9-millimeter shell casings and damage to the residence caused by gunfire. (*Id.* at 6.) Det. Aitchison acknowledged that there was no evidence linking Defendant to this shooting and Defendant was not charged. (*Id.* at 28.)
>
> At the time of Defendant's arrest on February 18, 2026, Det. Aitchison was aware of aspects of Defendant's criminal history, including a previous conviction for being a felon in possession of a firearm. (*Id.* at 7.) Det. Aitchison was also aware of "local arrest history" showing cautions for carrying weapons, resisting arrest, and assaulting officers. (*Id.*) Finally, as a member of [Violent Crime Apprehension Team (VCAT)], Det. Aitchison was aware from Det. Kramer that Defendant was

2

in possession of a firearm and riding a motorized bike within the two weeks prior to his arrest.  (*Id.* at 7, 29)

On the day of the arrest, Det. Aitchison was patrolling near the 700 block of Logan Avenue in Waterloo, an area with a convenience store that VCAT deems a high-crime area, and where law enforcement has responded to multiple reports of weapons violations, drug distribution, and assaults. (*Id.* at 8.)  Det. Gavin Kramer was also in the squad car.

While traveling north in the 800 block of Logan Ave in his patrol vehicle, Det. Aitchison recognized Defendant traveling south on a bicycle. (*Id.* at 9; Def. Ex. B.)  The recognition happened in a matter of seconds. (Aitchison Hr'g Test. at 22.)  Det. Aitchison had never personally interacted with Defendant, but he had seen booking photos from some unknown dates.  (*Id.* at 22.)  Defendant was not engaged in any illegal activity at the time Det. Aitchison encountered him.  Det. Aitchison did not have information that Defendant was engaged in gang activity or drug distribution.  (*Id.* at 23-24)

Det. Aitchison turned his vehicle around to make contact with Defendant.  (*Id.* at 10.)  Det. Aitchison called out to Defendant, addressing him by name and asking him to stop, but Defendant continued along a sidewalk, through a grassy area, and then down an alley.  (*Id.* at 34; Def. Ex. B.)  During the pursuit, Det. Aitchison's vehicle left the roadway and followed Defendant on a sidewalk.  Det. Aitchison testified that this refusal to stop constituted interference with official acts.  (Aitchison Hr'g Test. at 34.)

After Defendant emerged from the alley, he appeared to lose control of the bicycle.  The bicycle slid from under Defendant, and he fell on the grass at the side of the street with the bike straddling the curb, partially in the street.  (*Id.* at 10; Def. Ex. B at 17:01:25.)  Det. Aitchison stopped the squad car.  (Def. Ex. B at 17:01:26.)  Defendant attempted to flee, but Det. Kramer exited the squad car and cut him off.  (Aitchison Hr'g Test. at 11.) Det. Aitchison exited the squad car and assisted Det. Kramer in taking Defendant into custody.  (*Id.*; Def. Ex. B at 17:01:33.)  Defendant was immediately handcuffed behind his back and did not resist arrest. (Aitchison Hr'g Test. at 24-26.)  Det. Aitchison testified that it is not uncommon for people with outstanding warrants to run from law enforcement.  (*Id.* at 25.)

As officers were discussing the reason for the stop, Defendant shouted, "put my bike up, bro," apparently to a man standing across the street. (*Id.* at 11; Gov. Ex. 1 at 17:02:13, 17:02:18; 17:02:34.) Det. Aitchison recognized the man across the street as Keyshawn Outlaw who he knew from drug distribution and weapons investigations. (Aitchison Hr'g Test. at 12.) Det. Aitchison testified that Defendant was not thoroughly searched while he remained on the ground, as officers would prefer, because it would take longer and "Once he started asking someone else to come get the bicycle, I wanted to get him up into the vehicle faster so we could get the search done." (*Id.* at 13.) Mr. Outlaw was within about 30 feet of the bicycle, and he was not the only bystander. (*Id.* at 14.) None of the bystanders made any effort to "get" the bike. (*Id.* at 31.)

Defendant was cuffed and seated in the back of the squad car by 17:02:44. (Gov. Ex. 1.) Det. Kramer left the door of the vehicle open and continued to speak with Defendant. Det. Aitchison picked up the bicycle at 17:02:53 and then leaned it against the front of the squad car and began searching the bag behind the bicycle seat. At this point, the rear door of the vehicle remained open while Det. Kramer talked to Defendant. Det. Aitchison testified that he immediately searched the bag to avoid someone else locating a firearm he believed was present. (Aitchison Hr'g Test. at 14-15.) Defendant was approximately 10 feet from Det. Aitchison, handcuffed, and sitting in the back of the squad car with Det. Kramer standing in the car door when the search commenced. (*Id.* at 27.) Det. Aitchison believed he had probable cause for the search for the following reasons, "Due to the recent – the previous cases that we just talked about, the weapons investigations, the location that we located Mr. Williams, as well as what happened during the chase, him stepping away from the bicycle and then him trying to get someone else to come get it." (*Id.* at 15.)

Det. Aitchison found a handgun in the bicycle bag at 17:03:34. (Gov. Ex. 1.) The door of the squad car by Defendant was shut and locked within a few seconds. (Aitchison Hr'g Test. at 27.) At 17:03:44, Det. Aitchison mentioned the possibility of impounding the bike. (Gov. Ex. 1.) He testified it was a "higher value bicycle" and he would not simply leave it there to ensure Defendant could reclaim it upon release from custody and to avoid a property dispute. (Aitchison Hr'g Test. at 16.) After recovering the firearm, Det. Aitchison believed he had stronger probable cause to continue the search. (*Id.* at 17-18.)

4

Det. Aitchison testified that because he had decided to impound the bicycle, he conducted an inventory search to document anything of value and identify potential hazardous items such as uncapped syringes or fixed-blade knives. (*Id.* at 18.) As it happened, the inventory did not identify anything of value that he found necessary to document such as large quantities of cash, phones, or jewelry. (*Id.*) Det. Aitchison was not aware of nearby property where Defendant might want the bicycle to be left. (*Id.* at 19). Additionally, he did not consider leaving the bicycle with Mr. Outlaw because, after the gun was discovered in the bag, Defendant did not ask Mr. Outlaw to take it. (*Id.*) Det. Aitchison did not ask Defendant if he wanted the bicycle released to anyone. (*Id.* at 32.)

Det. Aitchison testified that the WPD's procedure for conducting an inventory is to determine if there are valuable items present that should be documented. (*Id.*) He testified that the department has a policy regarding vehicle towing that provides that a vehicle should not be towed if the owner requests it be released to another person who is present. (*Id.* at 33.) Other than the inventory accompanying a vehicle seizure, the WPD does not have a written policy about conducting an inventory search of a bag or about bicycle impoundments. (*Id.* at 36.)

The bicycle itself was identified with a property tag, but the bag was never inventoried; that is, its contents were never itemized and committed to writing. As the officer in charge of the investigation, it was Det. Aitchison's decision not to inventory the bag. (*Id.* at 37-38.)

Ultimately, the bicycle was folded up (which is apparently something bicycles do these days) and placed in the rear of a squad car. (*Id.* at 36.)

Doc. 37 at 3-7 (footnotes omitted).

## B.    *The Parties' Arguments*

The Government argues the warrantless search of Williams' bicycle bag was justified by three exceptions: (1) search incident to a lawful arrest, (2) the vehicle or automobile exception and (3) the inevitable discovery doctrine based on a valid inventory search. Williams argues that none of these exceptions apply. As to the search being incident to lawful arrest, he argues the bike was not in his immediate control, as he was

handcuffed and in the back of a patrol car.  He argues the automobile exception does not apply to an electric bicycle and, even if it does, there was not probable cause to support the search.  Finally, he argues the inevitable discovery doctrine does not apply because there is no standardized procedure within the WPD regarding an inventory search.

## C.     Recommendations

Judge Roberts recommends denying the motion to suppress based on any or all of the three exceptions identified by the Government.  He concluded the search incident to arrest exception applied because:

> (1) Defendant had been in possession of the bicycle within seconds of the search; (2) the nature of the offense for which Defendant was being arrested related to possession of a firearm; (3) recent information regarding Defendant's possession of a firearm; (4) the presence of bystanders with known criminal history; (5) the presence of only two police officers; and (6) the difficulty in exerting "exclusive" control over the bicycle under these circumstances.  Here, the fact that Defendant was not fully secured in the rear of the squad car is also relevant.  I conclude that although Defendant was not physically in a position to access the bicycle bag, his efforts to persuade others to take the bicycle presented a similar threat to officer safety.

Doc. 37 at 16.  He concluded the search was also valid under the vehicle exception because, like a vehicle, the electric bicycle was (1) readily capable of being used on the highways and (2) was found stationary in a place not regularly used for residential purposes.  *Id.* at 17 (citing *California v. Carney*, 471 U.S. 386, 392 (1985)).  While he noted the similarities and differences between an electric bicycle and automobile, he concluded that based on the circumstances (the possible presence of a firearm, the presence of bystanders and the limited number of officers immediately present), there was no basis to treat the bicycle as something other than a vehicle for the purpose of evaluating this exception.  *Id.* at 21.

Judge Roberts also concluded there was probable cause to search the bag based on the following:

6

- Williams' outstanding warrant arising from a November 2025 weapons charge in which he allegedly threatened a victim and the victim reported Williams was in possession of a firearm and had previously pistol-whipped someone.[1]

- Williams fled from law enforcement before and after crashing his bicycle.

- Williams ran from his "higher value" bicycle after he crashed it suggesting he wanted to distance himself from the bicycle and any contraband it might have on it. He also attempted to have others take his bicycle.

*Id.* at 22-23.

Finally, Judge Roberts concluded the firearm would have been discovered during a permissible and inevitable inventory search based on Detective Aitchison's testimony that there was no alternative manner to deal with the bicycle. While the WPD does not have a written policy regarding the impoundment and inventory of property outside of vehicles, he testified that it is up to the arresting officer's discretion, who may consider things such as whether there was valuable items that should be documented or to remove any potentially dangerous items. *Id.* at 29-31. He concluded that while not rigorous, the policy was not standardless. *Id.* at 30. Judge Roberts also noted there was no evidence that any inventory search was mere pretext. For these reasons, Judge Roberts recommends denying Williams' motion to suppress.

### III. STANDARD OF REVIEW

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may

---

[1] While Judge Roberts recognized this charge was three months old, officers had been informed that two weeks earlier, Williams was in possession of a firearm and had been seen riding a motorized bicycle.

accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

## IV. DISCUSSION

### A. Williams' Objections

Williams objects to the conclusion that all three exceptions apply to the warrantless search of the bicycle bag. As to the search incident to arrest exception, he objects to the conclusion that the officer's control of the bicycle and bag (containing the firearm) was "less than entirely exclusive." Doc. 37 at 15. Williams also (1) disagrees that he had been in possession of the bicycle within seconds of the search, (2) challenges the

8

reliability of the information regarding Williams' possession of a firearm in the two weeks prior and (3) disputes that the arrest based on the outstanding warrant for harassment three months earlier justified the search.

With regard to the vehicle exception, Williams objects to the conclusion that his electric bicycle qualifies as a "vehicle" for purposes of the exception. He also distinguishes a search of the bike from a search of the bike bag, which he likens to a glovebox in a car. While the automobile exception has been extended to gloveboxes and the like, he notes this extension has been justified by the "pervasive regulation of vehicles capable of traveling on the public highways." Doc. 38 at 3 (quoting *United States v. Maccani*, 526 F. Supp. 3d 420, 449 (N.D. Iowa 2021), *aff'd*, 49 F.4th 1126 (8th Cir. 2022)). He argues there is no evidence of similar regulations for bicycles such that it can be said a bicycle rider also has a reduced expectation of privacy, especially where a bag on a bicycle may hold contents not visible to others.

Williams also objects to the conclusion that there was probable cause to search the bag, arguing little weight should be given to information from the unknown source that Williams was in possession of a firearm and riding a motorized bicycle in the two weeks prior. He notes the harassment charge was three months old and, in any event, provides a logical explanation for Williams' flight from the officers. His requests to have others take the bike also has an innocent explanation – to avoid impoundment.

Finally, Williams objects to application of the inevitable discovery doctrine based on a valid inventory search. He disputes that there were no other options but impoundment for the bicycle, noting that it could have been moved off the roadway, locked up, left with the bystander whom Williams was requesting to take it, or released to someone else of Williams' choosing. He also objects that a search of the bicycle bag would have been conducted pursuant to standardized procedures, noting the WPD has no written inventory policy for such items and whether to do an inventory is left entirely to the subjective determination of the arresting officer. Because there is no standardization,

9

he argues this exception cannot apply. For these reasons, Williams objects to the recommendation that the court deny his motion to suppress.

### B.  *Analysis*

### 1.  *Search Incident to Arrest Exception*

Williams objects to the finding that the e-bike was not in exclusive control of the officers and challenges the timing of his possession of the e-bike in relation to the search, the reliability of information regarding his alleged possession of a firearm in the two weeks prior to the search and whether his outstanding warrant for harassment three months earlier justified the search, as that is the offense for which he was arrested.

"[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332, 338 (2009). A search incident to arrest is one such exception. *Id.* "A search incident to arrest may lawfully extend to 'the arrestee's person and the area within his immediate control," which is an area within which an arrestee might reach to grab a weapon or evidentiary items. *United States v. Perdoma*, 621 F.3d 745, 750 (8th Cir. 2010). The Eighth Circuit defines area of immediate control broadly – it is not limited to an area that is "conveniently or easily accessible to the arrestee." *United States v. Morales*, 923 F.2d 621, 626 (8th Cir. 1991). The purpose of the exception is to promote officer safety and evidence preservation. *Id.*

Even if an arrestee is restrained and an item is within the exclusive control of the officer, it still may be within the arrestee's immediate control for the purposes of this exception. *Id.* For example, in *United States v. Horne*, 4 F.3d 579 (8th Cir. 1993), the court found that a search of the chair and cushions where the defendant had been sitting moments before his arrest was reasonable, even though the officer had handcuffed the defendant just before conducting the search. *Id.* at 586. The court stated that the officer

10

could reasonably have believed weapons were in reach of the handcuffed defendant or others in the house who may have not yet been detained. *Id.* at 587.

In *Perdoma*, the defendant was placed under arrest and handcuffed after attempting to flee the police. 621 F.3d at 748. Officers then searched the bag he had been carrying and discovered methamphetamine. *Id.* The court held the search was valid under the search incident to arrest exception because the search of the bag occurred in close proximity to where the defendant was restrained, the defendant had already fled once and the officers did not know how strong he was. *Id.* at 750–51. Because *Perdoma* did not involve the search of a vehicle, the Eighth Circuit decided it "need not contemplate here to what extent *Gant* has application beyond the context of vehicle searches." *Id.* at 751-52.

Based on my de novo review of the evidence, the facts of this case fall somewhere between those in *Gant* and *Perdoma*. In *Gant*, the defendant and others at the scene were handcuffed and locked in the back of a patrol cars when officers conducted a search of the defendant's vehicle. *Gant*, 556 U.S. at 336. The arrest occurred at the end of a private driveway. *Id.* In *Perdoma*, the defendant was handcuffed in a public bus terminal after fleeing from officers. *Perdoma*, 621 F.3d at 748. The search of the bag occurred in close proximity to where the defendant was restrained. *Id.* at 751. Here, the arrest and search occurred on a public street with at least five bystanders who can be observed approaching or near the scene on Government Exhibit 1.[2] While Williams was being arrested, he yelled out to the nearest bystander[3] multiple times to "put my bike up, bro" and "tell my girl to come get it." While Williams was restrained and in the back of a

---

[2] Aitchison estimated the closest individual was approximately 30 feet from the officers and bicycle and the other approaching individuals were within 50 feet of them and was one of the reasons Aitchison asked Kramer whether additional officers were coming. Doc. 39 at 16, 19.

[3] As noted in the R&R, Aitchison recognized this person as Keyshawn Outlaw, whom Aitchison knew from drug distribution and weapons investigations. Doc. 37 at 5. Aitchison testified Outlaw is someone involved in criminal activity and has a criminal history. Doc. 39 at 14.

11

police vehicle with Kramer standing in front of the open door, Aitchison was the only other officer on the scene. He leaned the bicycle against the front passenger side of the police vehicle before performing the search of the bag less than two minutes after Williams crashed the bicycle.[4]

Williams' objections to the application of this exception are primarily focused on his proximity to the bicycle and the fact that he was restrained during the search. However, he ignores other relevant facts, including: Williams' initial flight, his calling out to an unrestrained nearby bystander (associated with drug and weapons offenses) to take his bicycle, the presence of other nearby bystanders, the fact that there were no other officers on the scene at this time and Aitchison's suspicion that the bag contained a firearm based on recent reports of such.[5] These facts presented a sufficient threat to officer safety to justify the search. *See United States v. Goodwin-Bey*, 584 F.3d 1117, 1119 (8th Cir. 2009) (concluding that an earlier incident report concerning the display of a firearm from a vehicle matching the make, model and color of the stopped vehicle, along with the number of the vehicle's occupants sufficiently implicated officer safety

---

[4] I agree with Williams that the record shows that the search of the bicycle bag was not within "seconds" of Williams' possession. However, it was within one to two minutes and I agree with the Government's description of the events being a "fluid fast-moving situation." Doc. 37 at 15.

[5] Williams' objection to this information is based on the paucity of details regarding the source of the information, how the source knew the alleged information as well as the fact that no report was generated concerning the information until after Williams was arrested. Aitchison testified Kramer told him approximately two weeks prior to Williams' arrest that Williams had been in possession of a firearm and riding a motorized bicycle in Waterloo. Aitchison did not know where or from whom Kramer had received that information. *See* Doc. 39 at 9-10. I agree with Judge Roberts that it was fair for Aitchison to consider this information as part of the justification for performing a search of the bicycle bag incident to arrest. While I agree that it is difficult to assess the reliability of this information, it is consistent with other information Aitchison had concerning Williams. This includes information from the victim of the harassment offense, who reported that Williams had been in possession of a firearm, Williams' criminal history and the fact that Williams was observed riding a motorized bicycle with a bag large enough to conceal a firearm.

concerns to justify a search incident to arrest under *New York v. Belton*, 453 U.S. 454 (1981)).[6]

Finally, with regard to the arresting offense (an outstanding warrant related to harassment that allegedly involved a firearm from a November 2025 incident) and whether the search had to be related to that offense for the search incident to arrest exception to apply, *Gant* instructs that this exception "derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations." *Gant*, 556 U.S. at 338. Officer safety was a concern here for the reasons described above. Under *Goodwin-Bey*, that was sufficient to justify a search incident to arrest under *Belton*. As such, Williams' objections related to the search incident to arrest exception are overruled.

### 2.    *Vehicle Exception*

Williams objects to a bicycle, and more specifically, a bicycle bag, falling under the vehicle exception based on the rationale behind the vehicle exception. He also objects to a finding of probable cause, arguing little weight should be given to the information from an unknown source that Williams had been seen riding a motorized bicycle with a firearm in the weeks prior and that there are innocent explanations for Williams' flight and request for a bystander to take his bicycle.

The "automobile exception" allows officers to conduct a warrantless search if, at the time of the search, they have probable cause to believe the vehicle contains contraband or other evidence of a crime. *Id*. at 1140-41 (citing *United States v. Wells*, 347 F.3d 280, 287 (8th Cir. 2003)). "Probable cause sufficient to justify a search exists where, in the totality of the circumstances, there is a fair probability that contraband or evidence of

---

[6] The court reasoned that when the concerns of the "reaching area" rule identified in *Gant* are present – protecting arresting officers and safeguarding any evidence of the offense of arrest that an arrestee might conceal or destroy – *Belton* allows a search as an exception to the warrant requirement. *Goodwin-Bey*, 584 F.3d at 1119.

a crime will be found in a particular place." *United States v. Kennedy*, 427 F.3d 1136, 1141 (8th Cir. 2005) (citing *Illinois v. Gate*s, 462 U.S. 213, 238 (1983)). "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *Wells*, 347 F.3d at 287 (8th Cir. 2003) (citing *United States v. Ross*, 456 U.S. 798, 825 (1982)).

One of the principal rationales of the vehicle exception is that unlike physical structures such as houses, an automobile may be quickly moved out of the locality or jurisdiction before a warrant can be obtained. *Carroll v. United States*, 267 U.S. 132, 153 (1925). A second rationale is that the "expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office." *California v. Carney*, 471 U.S. 386, 391 (1985). This applies both to the passenger compartment that is relatively open to plain view, but also to "repository" areas such as a trunk or glovebox. *Id.* at 391-92. The reduced expectation of privacy is derived from "the pervasive regulation of vehicles capable of traveling on the public highways." *Id. See also United States v. Dunn*, 928 F.3d 688, 693 (8th Cir. 2019) (explaining that the vehicle exception exists "because a vehicle's 'ready mobility' creates an exigency and because individuals have a 'reduced expectation of privacy in an automobile, owing to its pervasive regulation.'" (quoting *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996))).

As Judge Roberts observed, the similarities between electric bicycles and vehicles are extensive and "[b]y some measures, an electric bicycle is more mobile than a car or pickup truck." Doc. 37 at 19. An electric bicycle may not be subject to the same pervasive government regulation such as licensing, safety equipment and regulations addressing exhaust or noise that apply to motor vehicles. However, I agree with Judge Roberts that this does not factor into the expectation of privacy analysis because there are other aspects of bicycles (such as their very nature) that reduce the expectation of privacy – even in the absence of pervasive regulation. *See* Doc. 37 at 19 (noting they are less private than the interior of cars and it is more difficult to furtively hide objects from public view on a bicycle than in a vehicle). Thus, I agree with Judge Roberts that the

14

rationales for the vehicle exception apply to electric bicycles and their compartments, making it a valid exception to apply to the search of the bicycle bag here.

With regard to probable cause "[p]robable cause may be based on the collective knowledge of all law enforcement officers involved in an investigation and need not be based solely upon the information within the knowledge of the officer on the scene if there is some degree of communication." *Wells*, 347 F.3d at 287. It is not necessary that Aitchison knew the source of the intelligence that Williams had been seen riding a motorized bicycle and carrying a firearm in the weeks prior to the search. Kramer, who had received the intelligence, had communicated it to Aitchison and Kramer was with Aitchison during the stop and participated in Williams' arrest. Additionally, "officers may consider the known criminal history of a suspect in conducting the probable cause analysis." *United States v. Vittetoe*, 85 F.4th 1200, 1203 (8th Cir. 2023). Aitchison had knowledge of the circumstances surrounding the harassment charge from November 2025, which involved a firearm, and that Williams had a prior conviction for being a felon in possession of a firearm. While there may be innocent explanations for other factors contributing to probable cause (Williams' flight and asking a bystander to take the bicycle), the Supreme Court has observed that "innocent explanations – even uncontradicted ones – do not have any automatic, probable-cause-vitiating effect." *District of Columbia v. Wesby*, 583 U.S. 48, 68 (2018). *See also United States v. Perry*, 908 F.3d 1126, 1129-30 (8th Cir. 2018) ("Perry's possible innocent explanation did not require the officers to disregard other, less innocent possibilities or to ignore the other circumstances indicating guilt."). I agree with the reasons provided in the R&R for finding that Aitchison had probable cause to search the bicycle bag, supporting the application of the vehicle exception under these circumstances.

### 3. *Inevitable Discovery Doctrine Exception Based on Valid Inventory Search*

Williams objects to application of the inevitable discovery doctrine based on a valid inventory search for two reasons. First, he argues there were reasonable

15

alternatives to impoundment of the bicycle. Second, any inventory search would have been unlawful because the WPD does not have a standardized procedure for searching items such as bicycles and their accessories.

The inevitable-discovery doctrine "applies if the evidence would have been acquired by lawful means had the unlawful search not occurred but in fact *was not* acquired (or reacquired) by these lawful means." *United States v. Baez*, 983 F.3d 1029, 1037 (8th Cir. 2020). The principle behind this doctrine is "while the government should not profit from its illegal activity, neither should it be placed in a worse position than it would otherwise have occupied." *Id.* (quoting *Murray v. United States*, 487 U.S. 533, 539 (1988)). The admissibility of evidence obtained after a constitutional violation requires the Government to show that it was not obtained "by exploitation of that illegality [but] instead by means sufficiently distinguishable to be purged of the primary taint." *United States v. McManaman*, 673 F.3d 841, 846 (8th Cir. 2012). The Government must establish "by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means." *Id.* (quoting *Nix v. Williams*, 467 U.S. 431, 444 (1984)).

"An inventory search protects an owner's property while in police custody as well as protecting the police from danger and from subsequent claims about stolen property." *United States v. Allen*, 713 F.3d 382, 387 (8th Cir. 2013) (citing *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976)). "Examining 'all the items removed from the arrestee's person or possession and listing or inventorying them is an entirely reasonable administrative procedure.'" *Id.* (quoting *Illinois v. Lafayette*, 462 U.S. 640, 646 (1983)). "The reasonableness requirement is met when an inventory search is conducted according to standardized police procedures, which generally 'remove the inference that the police have used inventory searches as 'a purposeful and general means of discovering evidence of a crime." *United States v. Taylor*, 636 F.3d 461, 464 (8th Cir. 2011) (quoting *United States v. Marshall*, 986 F.2d 1171, 1174 (8th Cir. 1993)).

16

Williams' first objection relates to whether the bicycle was properly impounded. As Judge Roberts observed, that is one of three parts of determining whether a valid inventory search was performed (or would have been performed under the inevitable discovery doctrine). *See* Doc. 37 at 26 (citing *Colorado v. Bertine*, 479 U.S. 367 (1987) as identifying the three parts as: (1) whether law enforcement properly impounded the property, (2) whether the search was conducted pursuant to standardized procedures and (3) whether the police acted in bad faith or for the sole purpose of investigation). I agree that impoundment was reasonable based on the available options of leaving the bicycle on the sidewalk, locking it up or releasing it to Outlaw or someone identified by Williams. While Williams has identified these alternatives, he has not made any argument as to why any of them would have been more reasonable than impoundment, especially given Aitchison's testimony that he believed it to be an expensive bicycle and wanted to avoid any property disputes. Doc. 39 at 21-22. I agree with Judge Roberts that it was reasonable to impound the bicycle under the circumstances presented.

Williams' next challenge is that no valid inventory search could have been performed because Aitchison testified the WPD does not have a standardized procedure for searching bicycles, bags or luggage.[7] Doc. 39 at 39. Aitchison testified no inventory of the contents of the bag was made because he did not deem anything of value in it. Thus, the bicycle was tagged and placed in the bike impound. *Id.* at 40. When asked, "What are the [WPD]'s standardized procedures for conducting an inventory?" Aitchison responded: "We try to determine if there's any valuable items and that so we can properly document it." *Id.* at 35. Aitchison testified it is up to the discretion of the arresting officer to decide whether an inventory should be done under this situation. *Id.* at 40-41.

In addressing whether an inventory search would have been performed pursuant to a standardized procedure, Judge Roberts concluded the WPD's inventory policy was unwritten, and that under *United States v. Morris*, 915 F.3d 552, 555-56 (8th Cir. 2019),

---

[7] Aitchison testified there is only a written inventory policy for vehicle towing. Doc. 39 at 39.

the court may rely on officer testimony to establish the policy. He concluded that while the WPD policy was not particularly rigorous, it was not standardless. Doc. 37 at 30. He noted the policy in *Morris* also allowed an officer to exercise discretion as the testimony in that case was, although unwritten, it was "CCSO practice to inventory containers if deputies believe they may have items valued at $25 or more." *Morris*, 915 F.3d at 555. Otherwise, the *Morris* policy required inventory of "a vehicle's contents, including the trunk, for items valued at $25 or more." *Id.* For these reasons, Judge Roberts concluded the WPD policy of making an initial assessment of whether a formal inventory should be prepared sufficiently met the standardization requirement and that the decision to conduct an inventory was not entirely subjective. Doc. 37 at 31.

I do not agree that *Morris* offers a fair comparison for the purported standardized procedure here. The discretionary part of the *Morris* procedure applied only to whether to open and inventory containers, not to the initial question of whether an inventory should be completed at all. The Supreme Court has noted that nothing prohibits the exercise of police discretion, "so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." *Bertine*, 479 U.S. at 375. Here, there is no evidence of a policy or standardized criteria as to whether an officer conducts an inventory search of non-vehicle items. In other words, whether to conduct an inventory search is left entirely to the discretion of the arresting officer. To the extent there is anything standardized about an initial assessment of value, that applies only to whether to document items, not to the question of whether items, or the containers therein, may be opened as part of an inventory search.

In the absence of any standardized procedure or criteria as to the search of non-vehicle items and any containers therein, I find it unlikely that a valid inventory search of the bicycle bag would have been performed, leading to application of the inevitable discovery doctrine exception to the warrant requirement. For these reasons, Williams' objection based on the application of the inevitable discovery doctrine is sustained.

18

## V. CONCLUSION

For the reasons set forth herein:

1. Williams' objections (Doc. 38) to the Report and Recommendation (Doc. 37) are **overruled in part and sustained in part.** They are **overruled** as to the search incident to arrest and vehicle exceptions to the warrant requirement. They are **sustained** as to the inevitable discovery doctrine exception.

2. I **accept** the Report and Recommendation (Doc. 37) with the above modification.

3. Pursuant to the Report and Recommendation, Williams' motion (Doc. 24) to suppress evidence is **denied**.

**IT IS SO ORDERED** this 4th day of August, 2026.

_____
Leonard T. Strand
United States District Judge